**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ELIA T. WATKINS,

Plaintiff,

v.

NURSE FRANCISCO DEVARONA and DINO PATEL, M.D.,

Defendants.

Civil Action No.: JRR-23-1406

**MEMORANDUM OPINION**

Plaintiff Elia T. Watkins, who is currently incarcerated at Spring Grove Hospital Center ("Spring Grove"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Nurse Francisco Devarona and Dino Patel, M.D. ECF Nos. 12, 14, 20. Mr. Watkins alleges he was subject to excessive force by Devarona and not provided adequate medical care by Dr. Patel. He seeks monetary damages.

Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on August 23, 2024, along with a Motion to Seal. ECF Nos. 42 and 43. Mr. Watkins filed correspondence, which the Court will construe as an opposition to the Motion. ECF Nos. 45 and 47. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' Motions will be granted.[1]

## I. BACKGROUND

Mr. Watkins alleges that on May 3, 2023, at 3:00 a.m., while housed at Spring Grove, Nurse Devarona assaulted him while he was asleep. ECF No. 12 at 4; ECF No. 14 at 1; ECF No.

---

[1] Also pending is Attorney Brandy Gray's Motion for Leave to Withdraw as Counsel. ECF No. 49. Having reviewed the Motion, it shall be granted and Attorney Gray removed as counsel for Defendants.

20-1 at 6. He states that Devarona grabbed his ankles, "yanked" him off his bed to the floor, and "began kicking and punching" Mr. Watkins with his fists. ECF No. 12 at 4. Devarona then grabbed Mr. Watkins under his arm pits and threw him onto the bed, climbed on top of him, and continued to punch him in the face. *Id.* Mr. Watkins, regaining consciousness, tried to defend himself, hitting Devarona in the nose with his right fist causing Devarona to run out of Mr. Watkins' room. *Id.*; ECF No. 14 at 1. Mr. Watkins alleges that as a result of the attack, his pre-existing back injury has worsened, he is unable to sleep through the night, and he is sensitive to loud sounds. ECF No. 12 at 5; ECF No. 14 at 2.

According to Mr. Watkins, Dr. Patel was sent to examine him after the altercation. ECF No. 12 at 5. After a brief look, he declared Mr. Watkins uninjured despite an obvious injury to his left eye and face. *Id.* Dr. Patel did not order imaging to assess Mr. Watkins' possible injuries. *Id.* Instead, he asked Mr. Watkins why Nurse Devarona would attack him. *Id.* According to Mr. Watkins, he has continued to make numerous complaints of pain as well as blurred and lost vision. ECF No. 20 at 2-3. Still, five months after the assault, Dr. Patel has not seen Mr. Watkins in response to his complaints or his requests to see an eye specialist. *Id.* at 3. Mr. Watkins states that he cannot see more than five feet in front of him. *Id.*

According to an incident report from Spring Grove Police Officer Mary Sims, on May 3, 2023, Mr. Watkins reported to LPN Otusayo that Nurse Devarona had physically assaulted him. ECF No. 42-4 at 3. Mr. Watkins' statement to Officer Sims mirrors the allegations made in his Amended Complaint. *Id.* Devarona stated that he only saw Mr. Watkins when he did his rounds that evening and reported that Mr. Watkins had been asleep. *Id.* at 3-4. He denied ever touching or interacting with Mr. Watkins. *Id.*

Dr. Patel evaluated Mr. Watkins at 11:30 a.m. the morning of the report; he did not find Mr. Watkins to be in acute distress or bear indications of bruising, discoloration, or tenderness indicating such as would indicate an assault had occurred. ECF No. 42-5 at 3. He did note that while Mr. Watkins was alert and oriented, he was delusional and fixated on Nurse Devarona. *Id.* at 3-4. Based on the given statements and Dr. Patel's finding that Mr. Watkins had no injuries to his head, face, or chest, Officer Sims determined the claim to be unfounded. ECF No. 42-4 at 3, 4.

Watkins filed a grievance concerning his allegations against Devarona and pursued the appellate process to the Spring Grove CEO. *See* ECF No. 42-7. Staff were interviewed as part of Spring Grove's investigations of the grievance and none reported seeing or hearing the alleged incident. *Id.* at 2-3. (Mr. Watkins reported that his roommates were asleep at the time of the incident. *Id.* at 3.) The Rights Advisor at Stage 1 of the grievance process found Mr. Watkins' grievance invalid based on a lack of corroboration of his allegations, and because the alleged vicious attack Mr. Watkins did not result in observable injury. *Id.* at 4. The Rights Advisor recommended further investigation by hospital administration; Mr. Watkins agreed to appeal to Stage 2. *Id.* at 4-5. The Assistant Director of Nursing also found the claim invalid, again noting the lack of injuries despite Mr. Watkins assertion that "he heals very fast" and that Mr. Watkins had "fixed delusion about white staff." *Id.* at 5. Mr. Watkins was notified of the outcome and his claim was appealed to CEO Dr. Marie Rose Alam. *Id.* Dr. Alam also found the claim invalid because there were no injuries or corroborating witnesses, and the matter was closed. *Id.* at 8; *see also* ECF No. 42-8.

## II. MOTION TO SEAL

Defendants seek to seal the memorandum in support of their dispositive motion as well as Exhibits 1, 2, 3, and 5. ECF No. 43. Defendants state that all these filings contain or refer to Mr. Watkins' medical records and treatment at Spring Grove. ECF No. 43-1 at 1. Defendants made an identical request in reference to their original dispositive motion. *See* ECF No. 24.

Local Rule 105.11 states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2023). The rule balances the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access may be rebutted by demonstration that that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (quoting *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

The Court finds once again finds that Defendants have provided a compelling reason, but the less restrictive approach of limiting access to these filings to the case participants satisfies the

need to maintain Mr. Watkins' privacy as it pertains to his medical information. Accordingly, the Motion to Seal will be granted in part.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the Court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5

C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

**B. Discovery**

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (*per curiam*); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. FED. R. CIV. P. 56(d); *see also Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied

"where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted). Despite the absence of the non-moving party's Rule 56(d) affidavit, the Court shall not issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit places "'great weight'" on the Rule 56(d) affidavit, and holds that mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd.*, 302 F.3d at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

### C. Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting FED. R. CIV. P. 56(e)). The Court "view[s] the evidence in the light most favorable to … the nonmovant, and draw[s] all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002); *see F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015); *In re French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644–45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Mr. Watkins is self-represented, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the Court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## IV. DISCUSSION

Defendants seek dismissal of the Amended Complaint, or summary judgment in their favor, because the Amended Complaint is legally frivolous; Mr. Watkins fails to state a claim for relief; Mr. Watkins' claims are barred by the Eleventh Amendment; Defendants are entitled to qualified immunity; and Defendants did not violate Mr. Watkins' constitutional rights. ECF No. 42-1.

### A. Eleventh Amendment Immunity

Although Mr. Watkins does not specify in what capacity he sues Defendants, to the extent he sues Defendants in their official capacities, his suit may not proceed. The Eleventh Amendment

to the United States Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Correctional Defendants are Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, to the extent Mr. Watkins' pleadings could be construed to raise claims against Defendants in their official capacities, those claims are barred by the Eleventh Amendment and will be dismissed with prejudice. Claims against Defendants in their individual capacities are permitted to proceed.

**B. Excessive Force**

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). In cases involving allegations of excessive force, the Court must determine: (1) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" – the subjective component, *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)); and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious" – the objective component, *Boone*, 583 F. App'x at 176 (quoting *Williams*, 77 F.3d at 761).

To determine whether Nurse Devarona acted maliciously or sadistically to cause harm, this Court must consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The absence of

significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability may not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, viewing the record in the light most favorable to Mr. Watkins, no genuine dispute of fact has been generated as to whether the alleged assault occurred. It is undisputed that: Devarona conducted rounds but had no interaction with Mr. Watkins, who was asleep; neither Mr. Watkins' roommates nor any Spring Grove staff saw or heard the alleged assault; and his facility records bear zero evidence of any injury whatsoever. Mr. Watkins submits no admissible evidence in support of his allegations save his self-serving statements. This, the record is so overwhelmingly one-sided such that Devarona is entitled to prevail as a matter of law. .

**C. Medical Care**

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff suffered from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson*, 503 U.S. at 9 (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d

170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839, 840; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The Court need not assess the subjective component here, because Mr. Watkins presents no evidence of an objectively serious medical need. Once again, Mr. Watkins has not provided any support for the injuries he allegedly sustained in Devarona's alleged assault. The record shows that he was examined by Dr. Patel shortly after reporting the incident, and Dr. Patel did not find that Mr. Watkins had suffered any injury; and, notably, that Mr. Watkins denied being in pain. *See* ECF No. 42-5 at 2. Even to the extent that Mr. Watkins asserts that Dr. Patel should have ordered additional testing and imaging which would have revealed his injuries, his allegations do not rise to the level of a constitutional violation. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428

F.2d 1, 6 (3d Cir. 1970)); *accord Jackson*, 775 F.3d at 178 ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference."). There are no exceptional circumstances presented here. Dr. Patel did not observe injures on Mr. Watkins or symptoms to suggest further diagnostics were medically appropriate. Dr. Patel is therefore entitled to summary judgment in his favor as well.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment is granted and Defendants' Motion to Seal is granted in part. Any official capacity claims against Defendants are dismissed; judgment is otherwise granted in Defendants' favor.

A separate Order follows.

December 16, 2024

/S/

Julie R. Rubin
United States District Judge